RECEIVED
IN LAKE CHARLES, LA
MAY 06 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| LOUIS JAMES TOTH, ET AL | : | DOCKET NO. 06-0998 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| CALCASIEU PARISH, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment by the Harrah's Defendants" (doc. #109) wherein defendants Harrah's Lake Charles, L.L.C., Harrah's Star Partnership, Players Riverboat II, LLC, Players' Riverboat Management, LLC and Jason Comeaux (collectively referred to as Harrah's) move to dismiss all claims filed by plaintiffs against Harrah's at Plaintiffs' costs pursuant to Federal Rule of Civil Procedure 56.

## FACTUAL STATEMENT

On September 23, 2005, plaintiffs, Louis Toth, Jeffrey Schmitz and Ronald Moon, drove into an empty parking garage at Harrah's Lake Charles Casino and parked their vehicle. At the time there was a Mandatory Evacuation Order in place for the Parish of Calcasieu. Plaintiffs adorned themselves with hockey goalie face masks and head protectors, baseball catcher's chest protectors and other protection for their legs. While walking on the Harrah's property, Plaintiffs were apprehended by Connor McLaughlin, Harrah's Director of Securities and Facilities, and Jason Comeaux, Harrah's IT Manager. It is disputed as to whether McLaughlin was working as a reserve deputy sheriff for Calcasieu Parish, or whether he was working as a security guard for

Harrah's. Jason Comeaux, also a reserve officer for the City of Iowa, Louisiana's Police Department testified that he was working for Harrah's. At some point while Plaintiffs walked on the property, Louis Toth picked up either a stick or a two by four and was carrying this object when the men were apprehended. A factual dispute exists as to the size of the object.

Upon suspicion of looting,[1] McLaughlin and Comeaux detained the Plaintiffs and took them in to one of the Casino's hotel rooms[2] where they remained until they were transported to the Calcasieu Parish jail. Plaintiffs have made the following claims against Harrah's; 42 U.S. C. § 1983, willful misconduct,[3] false arrest/ imprisonment, assault and battery, intentional infliction of emotional distress, gross negligence, negligence, civil conspiracy and loss of consortium. There is a factual dispute as to the events that took place from the time the Plaintiffs were apprehended by Harrah's employees until they were released on bond by the Calcasieu Parish sheriff's office.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A fact is "material" if its existence or

---

[1] It is disputed as to what crime Plaintiffs' were suspected of committing. Comeaux testified that they were suspected of criminal trespass, and McLaughlin testified that he suspected the plaintiffs of looting.

[2] It is disputed as to how many rooms were used to hold the plaintiffs while they waited to be transported to the Sheriff's office/jail.

[3] The claim of willful misconduct was dismissed on Motion of Defendants. See doc. #33.

[4] Fed. R.Civ. P. 56(c).

2

nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

Defendant, Harrah's, seeks to dismiss all of Plaintiffs' claims pursuant to Rule 56. Harrah's maintains that there are no genuine issues of material fact for trial, and that they are

---

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[7] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[8] *Anderson*, 477 U.S. at 249.

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Anderson*, 477 U.S. at 249-50.

3

entitled to judgment as a matter of law.

*Section 1983 claims*

> To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that he has been "deprived of a right 'secured by the Constitution and the laws' of the United States," and (2) that the deprivation was caused by a person or persons acting "under color of" state law.[12]

For a plaintiff to state a viable claim under § 1983 against private entities, the conduct of the private defendant [Harrah's] that forms the basis of the claimed constitutional deprivation must constitute state action under color of law.[13] Harrah's maintains that it cannot be liable under § 1983 because there is no genuine issue of material fact that it was not a state actor. The focus of the inquiry is whether "such a close nexus between the State and the challenged action" exists "that seemingly private behavior may be fairly treated as that of the State itself."[14] As noted by the Supreme Court, the inquiry into whether private conduct bears a sufficiently close nexus to the state is highly circumstantial and far from precise.[15]

In *Morris v. Dillard Department Stores, Inc.*,[16] the court held that the private merchant was not a "state actor" for purposes of civil rights liability for the arrest of a customer by an off duty police officer who was acting as the security guard subsequent to a report of suspected shoplifting

---

[12] *Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir. 1999)(citing *Flagg Brothers v. Brooks*, 436 U.S. 149 (1978)).

[13] *Lugar v. Edmunson Oil Co.*, 457 U.S. 922, 924, 928-32 (1982).

[14] *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295, 121 S.Ct. 924 (2001).

[15] *Id.*

[16] 277 F.3d 743 (5th Cir. 2001).

4

made by another employee, where the officer, acting as a security guard, conducted an independent investigation, including independent observation of the customer and completion of his own incident report, and did not form an intent to arrest the customer until she left the store, returned and confronted the officer. In *Smith v. Brookshire Bros. Inc.*,[17] the court held that in order to subject a merchant to liability, the plaintiffs had to show that the police and the store managers were acting in concert; that [the private merchant] and the police had a customary plan whose result was detention. The court concluded that the merchant was subject to liability because the police and the merchant maintained a pre-conceived policy by which shoplifters would be arrested based solely on the complaint of the merchant.[18]

The application of the doctrine was refined in *White v. Scrivner Corp.*,[19] *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*,[20] and *Bartholomew v. Lee*,[21] wherein the courts have established that a merchant is not a state actor unless the conduct on the part of a guard or officer

---

[17] 519 F.2d 93, 94 (5th Cir. 1975).

[18] *Id.*

[19] 594 F.2d 140, 141 (5th Cir. 1979)(upholding a bench verdict in favor of a merchant on a § 1983 claim because unlike the police in *Brookshire, supra*, the police in *White* had a policy of conducting independent investigations to make determinations to arrest and "did not customarily rely solely on the merchants' accusation)

[20] 673 F. 2d 771, 772 (5th Cir. 1982)(upholding a bench verdict in favor of a merchant on a § 1983 claim where the plaintiff was detained in a store on suspicion of shoplifting, a police officer was called to the scene, the officer performed an independent investigation and arrested the plaintiff).

[21] 889 F.2d 62, 63 (5th Cir. 1989)(declining to find state action on the part of a defendant shopping mall where arresting officers made the arrest of customers causing a disturbance based not only on the request of mall security, but also on independent observation).

giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer.

Such is not the case here, there is no evidence that there was a preexisting agreement between Harrah's and the sheriff's department to make arrests based solely on the complaint of the merchant. McLaughlin called in to report with the sheriff that he would be "working at Harrah's property."[22] He subsequently called the sheriff's department and took orders from them as to the arrests of the plaintiffs. McLaughlin made an independent investigation of the incident. The undisputed summary judgment evidence establishes that Harrah's relied upon the State Police for security, and that the State Police maintained an office at the Casino.[23] Furthermore, there is undisputed testimony that Harrah's was not aware that either McLaughlin or Comeaux were either "on duty" and/or patrolling Harrah's property on the night Hurricane Rita made landfall. Steve Dichkus, the general manager of the casino, testified in his deposition that he ordered all personnel to leave the property, and that he did not want anybody left on the property during the hurricane.[24] Finally, Harrah's policy was *not* to detain suspects, but to allow them to leave.[25] Accordingly, the court concludes that Harrah's is not a state actor, and that the § 1983 claims against it must be dismissed.

*Is Harrah's immune from the false imprisonment/arrest claims?*

---

[22] Harrah's exhibit D, depo of McLaughlin, pp. 52 and 100.

[23] Harrah's exhibit A, Depo. of Steve Ditchkus (Harrah's General Manager) at pp. 36-38.

[24] *Id.*, p.54.

[25] Harrah's exhibit B attached to Harrah's response to Government' defendants opposition, depo of McLaughlin, pp. 142-43.

6

Plaintiffs allege claims of false arrest and false imprisonment against Harrah's which are the same tort under Louisiana law.[26] The court notes that McLaughlin considered himself to be working both for Harrah's and the sheriff's department.[27] McLaughlin had returned to Harrah's to "lock the property down."[28] Comeaux, an Iowa reserve deputy and IT manager for Harrah's, was assisting McLaughlin secure the main building. Comeaux accompanied McLaughlin to his home and both returned to Harrah's property and remained on security duty.[29] Again, there is a dispute as to whether or not McLaughlin was acting as an employee/security guard for Harrah's or as a sheriff's deputy.

"[A]n essential element of claims under Louisiana law of false arrest, false imprisonment, and malicious prosecution is a lack of probable cause."[30] Hence, a plaintiff must allege and prove he or she was detained, and that the detention was unlawful.[31] Article 214 of the Louisiana Code of Criminal Procedure provides that any person may make a citizen's arrest of another seen committing a felony. Article 215 of the Code of Criminal Procedure provides that a merchant can detain an individual upon reasonable suspicion of theft. Louisiana law provides that:

> 'Reasonable cause' under article 215 is not synonymous with probable cause, when

---

[26] *Kelly v. West Cash & Carry Bldg. Materials Store*, 745 So.2d 743, 761 (La.App. 4th Cir. 1999).

[27] Plaintiffs' exhibit 16, McLaughlin depo., p. 119.

[28] Plaintiffs' exhibit 16, McLaughlin depo. pp. 27, 28.

[29] Plaintiffs' exhibit 15, Comeaux depo. pp. 16-22.

[30] *Morris*, 277 F.3d at 756 (citing *Tabora v. City of Kenner*, 650 So.2d 319, 322,23 (La.App. 5th Cir. 1995)).

[31] *Cooks v. Rodenbeck*, 711 So.2d 444, 447 (La.App. 3rd Cir. 1998).

a detention, rather than an arrest is involved.

> Reasonable cause for an investigating detention is something less than probable cause. It requires, however, that the detaining officer have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity.[32]

Harrah's maintains that it cannot be held liable for false arrest under Louisiana law because of a merchant's immunity citing *Townsend, supra* which analyzed that:

> [w]here the detention complained of is authorized by La. Code Crim.P. art. 215, the merchant will be immune from criminal and civil liability. For this privilege to be operative, that statute simply requires a reasonable cause in the mind of the merchant to believe that the person has committed a theft. The article does not address, and we are not concerned with, the state of mind of the person detained. That issue, the criminal intent, is relevant only in determining guilt or innocence of a criminal charge.[33]

Thus, Harrah's argues that it was entirely reasonable to believe that three men prowling Harrah's property in violation of a Mandatory Evacuation Order and dressed in body armor had, or were about to commit a crime. Plaintiffs maintain that there are genuine issues of material fact as to whether or not McLaughlin and Comeaux had reasonable cause to arrest or imprison them. They argue that they never entered Harrah's establishment, and that they entered the parking structure after finding out that Interstate 10 was closed because of the dangerous hurricane and traffic conditions. They further assert that Harrah's entrance and parking structure were open. Even though, McLaughlin testified that it looked like they were trying to pry open Harrah's freezer, Comeaux testified that the plaintiffs had no tools to open the padlock. Plaintiffs assert that they

---

[32] *Townsend v. Sears, Roebuck & Co.*, 466 So.2d 675, 677-78 (La.App. 5th Cir. 1985) (quoting *State v. Hudgins*, 400 So.2d 889 (La.1981)).

[33] *Id.* (quoting *Mapes v. National Food Stores of Louisiana, Inc.*, 329 So.2d 831 (La.App. 1st Cir. 1976)).

8

told Harrah's security why they were in the area and offered to show them receipts for the items and/or supplies purchased and cash they had, but Harrah's refused to further investigate the matter. Plaintiffs assert that they asked Harrah's security to verify their purpose by calling their Church, but Harrah's security refused. Plaintiffs testified that they urged Harrah's security to inspect their vehicle and see their relief supplies, but Harrah's security refused. The Court concludes that Plaintiffs have presented sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not Harrah's security had a "reasonable suspicion" that would have warranted detention and/or imprisonment of the Plaintiffs.

*Assault and battery claims*

Harrah's maintains that because McLaughlin and Comeaux personally witnessed Plaintiffs looting or attempting to loot, they were justified in detaining them and/or how they detained them.

Assault and battery involves "a harmful or offensive contact with a person resulting from an act intended to cause the person to suffer such a contact.[34] It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent."[35] "Bodily harm is generally considered to be any physical impairment of the condition of a person's body, or physical pain or illness."[36]

Louisiana Code of Criminal Procedure article 220 provides that a "person making a lawful arrest may use reasonable force to effect the arrest and detention, also to overcome any resistance

---

[34] *Alvarado v. Doe,* 613 So.2d 166, 167 (La.App. 1992), quoting *Caudle v. Betts,* 512 so.2d 389, 391 (La.1991).

[35] *Id.,* citing W. Prosser & W. Keeton, *The Law of Torts* (5th Ed. 1984) § 9.

[36] *Id.,* at 392.

9

or threatened resistance of the person being arrested or detained." "Reasonable force" under article 220 "depends on the totality of the facts and circumstances of each case."[37]

Harrah's argues that McLaughlin and Comeaux were justified in using the force that they allege was necessary because "plaintiffs were spotted dressed in full combat gear, at night, at the height of Hurricane Rita, walking around outside an abandoned casino while one held a wooden club."[38] Louisiana courts consider several factors in determining whether the force used was reasonable, including "the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrest[ee]; the physical size, strength and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment."[39] Other factors include "whether the [arrestee] was intoxicated, belligerent, offensive or uncooperative."[40]

Plaintiffs maintain that there is a genuine issue of material fact for trial as to whether assault and battery claims are present. Plaintiffs submit their own testimony that Harrah's security officers sat on their knees on the back of a bound suspect, lifting one suspect up by his arms to demonstrate how to "pop" a man's arms out of his sockets. The security officers used force to inflict injury and pain on Plaintiffs. Plaintiffs also testified that they did not resist arrest or confinement; they were cooperative and unarmed. Comeaux testified that the Plaintiffs did not

---

[37] *Evans v. Hawley*, 559 So.2d 500, 503 (La.App. 2nd Cir. 1990).

[38] Harrah's memo. p. 16.

[39] *Evans*, 559 So.2d at 503 (citations omitted).

[40] *Id.* (citations omitted).

resist arrest or confinement.[41] Plaintiffs argue that Harrah's security was much greater in strength and size, and there was no exigent circumstances which justified the excessive force used. The Court finds that Plaintiffs have submitted summary judgment evidence to create a genuine issue of fact for trial as to whether or not Harrah's security used reasonable force to detain and/or arrest the Plaintiffs.

*Intentional infliction of emotional distress*

To recover for a claim of intentional infliction of emotional distress, the plaintiff must prove that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered was severe; and (3) the defendant desired to inflict emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct.[42] The plaintiff must prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[43] Conduct intended to cause "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is not sufficient.[44]

Harrah's maintains that the actions of handcuffing the plaintiffs and other related actions in connection with the detention and arrest are insufficient to constitute intentional infliction of emotional distress under Louisiana law.[45] Harrah's argues that the basis of Plaintiffs' claims is that

---

[41] Plaintiffs' exhibit 15, Comeaux depo. p. 33.

[42] *White v. Monsanto*, 585 So.2d 1205, 1209 (La.1991).

[43] *White*, 585 So.2d at 1209-10.

[44] *Id.* at 1210.

[45] Citing *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 587 (1986).

11

"Deputy McLaughlin, also the Director of Guest Safety and Service for Harrah's, arrested plaintiffs and detained them for trespassing and suspicion of looting at the height of Hurricane Rita, while dressed in combat gear and while one of them was armed with a wooden club."[46]

Plaintiffs maintain that they have established genuine issues of material fact on their intentional infliction claims based on the testimony of the Plaintiffs. For example, Plaintiffs assert that "although Mr. Toth did not resist arrest or detention, the two security officers threw him face down on the ground and weighed him down with their knees."[47] "They had guns pointed at the back of my head, and they were calling us names . . . it was very frightening."[48] "I felt two guns at both sides of my head."[49] One security officer lifted Mr. Toth up by his handcuffed arms almost to the point where his shoulders would pop out.[50] Plaintiffs argue that this evidence shows that Harrah's behavior was atrocious, extreme, intolerable and outrageous.

Harrah's challenges Mr. Toth's assertion that the security officers "threw" Mr. Schmitz and Mr. Moon against the wall. Harrah's asserts that this is not Mr. Toth's testimony. Harrah's further argues that "plaintiffs suffered, at most, minimal bruising which did not even warrant a visit to a physician..."[51] Be that as it may, the Court concludes that Plaintiffs have created a genuine issue of material fact for trial as to their claims of intentional infliction of emotional distress.

---

[46] Harrah's memo. p. 17.

[47] Plaintiffs' opposition. Memo. p. 32.

[48] Plaintiffs' exhibit 2, Toth depo. p. 100.

[49] Plaintiffs' exhibit 2, Toth depo. p. 103.

[50] Plaintiffs exhibit 2, Toth Depo. p. 242.

[51] Harrah's reply mem. p. 10.

*Negligence claims*

To recover for negligence or gross negligence, the plaintiff must prove duty, breach of duty, cause in fact, proximate cause and damages.[52] "Gross negligence exists[,] when there is such disregard of the interest of others that the tortfeasor's conduct amounts to a gross deviation below the standard of care expected [of] a reasonable careful man under the circumstances."[53] Security officers have a common law duty to perform their functions "in a reasonable fashion and act as a reasonably prudent man under the circumstances."[54]

Harrah's maintains that "even if some of that conduct were attributable to Harrah's it would be immune from state law claims pursuant to articles 214 and 215 of the Louisiana Code of Criminal Procedure,"[55] and that all activity was entirely reasonable after the three plaintiffs were spotted on Harrah's grounds at the height of Hurricane Rita. To the contrary, referring back to the conduct stated above concerning Plaintiffs' claims of intentional infliction of emotion distress, Plaintiffs argue that Harrah's employees' conduct was far below any reasonable standard of care. The Court finds that Plaintiffs have submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to their claims for negligence and/or gross negligence.

*Action for civil conspiracy*

Louisiana Civil Code article 2324 provides that "[h]e who conspires with another person

---

[52] *Detraz v. Lee,* 950 So.2d 557, 562 (La.2007).

[53] *Cole v. Dept. of Public Safety & Corrections,* 825 So.2d 1134, 1139-1140 (La.2002).

[54] *Arceneaux v. DeLa Rosa,* 889 So.2d 383, 388 (La.App.2004) *writ denied,* 896 So.2d 1009 (2005).

[55] Harrah's memo. p. 18.

13

to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." Louisiana law does not recognize an independent cause of action for "civil conspiracy."[56] Thus, Plaintiffs must plead not just the existence of a conspiracy, but also the existence of an underlying intentional tort which the conspirators agreed to perpetrate and which they actually committed in whole or in part.[57] To recover under the theory of civil conspiracy, the plaintiff must establish that there was an agreement as to the intended outcome or result.[58] The plaintiffs have failed to allege facts in their complaint to establish that Harrah's employees conspired to commit an intentional tort upon the Plaintiffs. Thus, the Court finds that Plaintiffs have not established that there was an agreement as to the intended outcome or result. Therefore, Plaintiffs' claims for civil conspiracy must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[59]

*Loss of consortium*

Harrah's maintains that the Plaintiffs' wives loss of consortium are entirely derivative of the husbands' claims, and because Plaintiffs can not prove any claims against Harrah's, the loss of consortium claims must also fail as a matter of law. Because the Court has found that Plaintiffs

---

[56] *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La.2002). *Rhyce v. Martin*, 173 F.Supp.2d 521, 535 (E.D. La. 2001).

[57] See *Butz v. Lynch*, 710 So.2d 1171, 1174 (La.App. 1st Cir. 1998), *writ denied*, 721 So.2d 473 (1998).

[58] *Id.*

[59] Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

have created a genuine issue of material fact on at least one claim, the Plaintiffs' wives' claims for loss of consortium are still viable and will not be dismissed.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by defendant, Harrah's, will be granted in part and denied in part. The claims against Harrah's for section 1983 and civil conspiracy will be dismissed, otherwise the motion will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of May, 2009.

*[signature]*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE